Argued and submitted February 12; resubmitted En Banc August 12, affirmed December 9, 1998, petition for review allowed April 29, 1999 (328 Or 464)

STATE OF OREGON,
*Appellant,*

*v.*

ROBERT JAMES ROHRS, SR.,
*Respondent.*

(TC96-15055; CA A97743)

970 P2d 262

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Benjamin Wakefield argued the cause for respondent. With him on the brief was Scott K. Thompson.

DE MUNIZ, J.

Warren, J., dissenting.

**DE MUNIZ, J.**

In this prosecution for driving under the influence of intoxicants (DUII), the state appeals from the trial court's pretrial order suppressing evidence of defendant's failure to submit to field sobriety tests. The arresting officer gave defendant a modified version of the statutory warning that his refusal or failure to submit to the tests could be used against him in court. The trial court held that the modification was insufficient to overcome the problems that the Supreme Court identified in *State v. Fish*, 321 Or 48, 893 P2d 1023 (1995). We affirm.

Officer Zbinden stopped defendant on August 10, 1996, in circumstances that we will treat, for the purposes of this opinion, as constituting probable cause to believe that defendant was driving under the influence of intoxicants. Zbinden twice asked defendant to take field sobriety tests. The first time defendant gave a nonresponsive reply; the second time he did not reply at all. Zbinden then gave defendant the following warning:

> "If you refuse to submit to physical tests required by law, evidence of the refusal or failure to submit may be used in a civil or criminal court or any other proceeding arising out of the failure or refusal to submit."

Zbinden then clarified what he meant by "physical tests": "I told him these differed from field sobriety tests, and he would not be required to speak." Defendant did not respond to Zbinden's warning.

The issue on this appeal is whether evidence of defendant's failure to respond to Zbinden's request that he take physical field sobriety tests[1] is admissible in this case. The answer involves the interplay between the statutory requirement that he submit and his state constitutional right not to give compelled testimony. Or Const, Art I, § 12. ORS 813.135 creates the obligation to submit to the tests:

---

[1] The warning that Zbinden gave referred to the tests as "physical tests," rather than as field sobriety tests. In the context of Zbinden's immediately preceding requests that defendant submit to field sobriety tests, defendant would have understood the warning as applying to physical field sobriety tests.

"Any person who operates a vehicle upon premises open to the public or the highways of the state shall be deemed to have given consent to submit to field sobriety tests upon the request of a police officer for the purpose of determining if the person is under the influence of intoxicants if the police officer reasonably suspects that the person has committed the offense of driving while under the influence of intoxicants * * *. Before the tests are administered, the person requested to take the tests shall be informed of the consequences of refusing to take or failing to submit to the tests under ORS 813.136."

ORS 813.136 establishes the consequences of refusing or failing to submit to the tests:

"If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

In *Fish*, the Supreme Court noted that those statutes created a Hobson's choice that required the defendant either to perform the tests or have evidence of the refusal admitted in court against him. It held that one of the statutory options—admission of evidence of nonperformance—is testimonial under Article I, section 12, of the Oregon Constitution, because the state wants the jury to infer that the defendant did not perform the tests because the defendant believed that he or she would fail them. It is constitutionally permissible to require a person to make the statutory choice between performing the tests and refusing to perform them only if requiring performance of the tests is constitutionally permissible. *Fish*, 321 Or at 56-58. For the state to be able to require a person to perform the tests, the tests must be nontestimonial. After examining the field sobriety tests, the court in *Fish* held that at least some aspects of some of the tests were testimonial. Because the officer in his warning did not identify which tests he wanted the defendant to perform, the court had to assume that the request included all authorized tests. Thus, in *Fish*, either option would require a defendant to provide testimonial evidence, something that Article

I, section 12, prohibits. *Id.* at 59-60. Evidence of the refusal was therefore inadmissible.

In *State v. Nielsen*, 147 Or App 294, 936 P2d 374, *rev den* 326 Or 68 (1997), we discussed the implications of *Fish* for the admissibility of evidence of field sobriety tests that a defendant actually performed after receiving the statutory warning. The issue was not whether field sobriety tests in the abstract are testimonial but whether the specific tests that the defendant performed were. We rejected the defendant's argument that all field sobriety tests are testimonial. We held that "testimony" is the

> "communication by words or conduct of an individual's thoughts, beliefs or 'state of mind.' Thus, purely verbal answers to purely verbal questions ('On an intoxication scale of 1 to 10, I think I rank a 2.') are testimony, as are answers by conduct to the same question (holding up two fingers to self-rank intoxication on a 1 to 10 scale)." *Nielsen* at 306.

We also held that a test that produces physical evidence of intoxication, without requiring an individual to reveal his or her thoughts, beliefs, or state of mind, is generally not testimonial. *Id.* We then determined that the heel-to-toe walk test was not testimonial and that the purely physical aspects of the one-leg-stand and modified Romberg tests also are not testimonial.[2] *Id.* at 308-09.

In *Fish*, the Supreme Court noted that the officer did not differentiate between testimonial and nontestimonial field sobriety tests in warning the defendant of the consequences of a refusal or failure to perform them.

> "When a police officer does not specify to an individual at the time the request is made which tests the individual will be required to perform, we must assume that a generic request to perform 'field sobriety tests' constitutes a request that the individual perform all of the tests approved in [the applicable administrative rule]. Thus, for purposes of our analysis in this case, if *any* aspect of the field sobriety tests

---

[2] The defendant did not argue that the counting portion of the one-leg-stand test was testimonial. Because he had recited the alphabet correctly during the modified Romberg test, which was the only verbal portion of that test, we held that any error in admitting the evidence of his verbal performance was harmless.

involves 'testimonial' evidence, then the request that defendant perform the tests involves a request for testimonial evidence." *Fish*, 321 Or at 59 (emphasis in original).

Here, in contrast to *Fish*, the state points out that Zbinden told defendant that his refusal or failure to perform "physical tests" would be admissible in court and further explained that "these tests differ from field sobriety tests in that [defendant] would not be required to speak."[3] According to the state, defendant's refusal is admissible because Zbinden asked defendant to perform physical, nonspeaking, nontestimonial tests; thus, the Hobson's choice identified in *Fish* is missing. We do not agree that the answer is that simple.

Police officers may request that an individual perform some, all, or none of the tests approved in OAR 257-25-020(1). *Fish*, 321 Or at 59. However, nowhere in this record does Zbinden explain what "physical tests" he intended to administer or to what degree these so-called physical tests matched or related to the sobriety tests approved in OAR 257-25-020(1). As we asserted in *Nielson*, "testimony" is the communication by words or conduct of an individual's thoughts, beliefs, or state of mind. In *Fish*, the court held that the state, as proponent of the evidence of the defendant's refusal, has the burden of establishing the admissibility of the evidence. *Id.* at 59. Because physical movement can reveal thoughts, beliefs, or state of mind (*e.g.*, holding up fingers to rank intoxication on a scale of 1 to 10), it was incumbent on the state to establish exactly what "physical tests" were to be administered in order to meet its burden under *Fish* to establish the admissibility of defendant's refusal. In the absence of evidence of what tests were actually intended, the use of the term "physical tests," even when accompanied by the caveat that defendant will not be required to speak, is not sufficient to render the request constitutionally permissible.

Affirmed.

---

[3] The statement that the tests "differ from field sobriety tests" might suggest that Zbinden was speaking about an entirely different category of tests. However, in the context of his previous statements seeking to get defendant to perform field sobriety tests the clear meaning was that the tests involved "differ from *[other]* field sobriety tests" in that they would not require defendant to speak.

**WARREN, J.,** dissenting.

I would hold that Officer Zbinden adequately identified the field sobriety tests that he asked defendant to perform and that those tests were all nontestimonial under *State v. Fish,* 321 Or 48, 893 P2d 1023 (1995), and *State v. Nielsen,* 147 Or App 294, 936 P2d 374 (1996), *rev den* 326 Or 68 (1997). For that reason, I would reverse the trial court's decision excluding evidence of defendant's refusal to perform the tests. I dissent from the majority's contrary decision.

The majority correctly describes the underlying legal principles. However, it does not recognize the extent to which the applicable administrative rules define what Zbinden meant when he asked defendant to perform "physical" tests. In light of those rules, the only tests that Zbinden *could* have asked defendant to perform would qualify as nontestimonial under *Fish* and *Nielsen.* Evidence of defendant's refusal is therefore admissible under ORS 813.136.

To qualify as a "field sobriety test," a test must be one that the Department of State Police has approved by rule and that permits an officer or a trier of fact to screen for probable impairment by intoxicating liquor, a controlled substance, or both. ORS 801.272. In August 1996, when Zbinden arrested defendant, the version of OAR 257-025-0020 in effect[1] listed nine approved field sobriety tests; those nine, thus, were the only tests that Zbinden could have used. They are the same tests that Justice Gillette described in his dissent in *Fish.* 321 Or at 72-75 (Gillette, J., dissenting). The horizontal gaze nystagmus test does not require the person to speak and nothing else about it would communicate his or her thoughts, beliefs, or state of mind. The same is true of the walk-and-turn test. The one-leg-stand test, as described in the rule, requires the person to count from 1001 to 1030 while standing on one leg. The Romberg balance test asks the person to estimate the passage of 30 seconds. The modified finger-to-nose test does not require speaking. The finger-count, alphabet, counting, and internal clock tests all involve a person speaking.

---

[1] The version of the rule that I discuss became effective on July 16, 1996.

Based on his statement to defendant, Zbinden could have administered the horizontal gaze nystagmus, walk-and-turn, and modified finger-to-nose tests as described in the rule. He might also have administered the one-leg-stand test without asking defendant to count and the Romberg balance test without asking defendant to estimate the passage of 30 seconds.[2] None of those tests would have required defendant to speak or otherwise provide information that the Supreme Court has identified as testimonial. Any test that would have required defendant to provide such information would not have been a purely physical test. Zbinden's warning, thus, did not place defendant in a Hobson's choice in which his only options were to give the testimonial evidence of his refusal or the testimonial evidence of field sobriety tests. It was free of the problems that the court identified in *Fish*.

The majority is correct that Zbinden did not explicitly identify the physical tests that he wanted defendant to perform. Zbinden did not need to do so, because the administrative rule had already performed that task for him. Under ORS 813.135, defendant was required to perform the physical tests that the administrative rules required and that Zbinden would have described to him had defendant not refused the tests. Defendant declined to do any tests, and ORS 813.136 therefore makes evidence of the refusal admissible in this case. The majority would hold Zbinden to a level of specificity that the statute does not require and that serves no practical purpose because, when the officer instructs defendant on how to perform a test, the test will necessarily be identified and described. I would read the statute, the rule, and Zbinden's actions in a way that would achieve the legislature's purpose within the constitutional constraints that the Supreme Court identified in *Fish*. Because the majority does not do so, I dissent.

Edmonds and Armstrong, JJ., join in this dissent.

---

[2] I do not need to consider whether modifying those tests in that fashion would have affected their value for determining whether defendant was under the influence of intoxicants.