Argued and submitted May 6, 2009, reversed and remanded March 31, petition for review denied July 29, 2010 (348 Or 621)

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## CHARLES ROBERT GARNER,
*Defendant-Respondent.*

Washington County Circuit Court
D064137T; A136585

228 P3d 710

Susan G. Howe, Senior Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

William Uhle argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

The state appeals the trial court's dismissal of a complaint charging defendant with driving under the influence of intoxicants (DUII) on the ground of prosecutorial misconduct sufficient to constitute double jeopardy. We reverse and remand.

The relevant facts are not in dispute. Defendant was stopped while driving, based on a police officer's belief that he was under the influence of alcohol. The officer called for back up. Officer Julifs arrived and asked defendant to perform field sobriety tests, and defendant refused. He was transported to the police station, where he again refused to perform field sobriety tests. Defendant refused to take a breath test. Defendant was charged with DUII. In a pretrial hearing before Judge Alexander, the state conceded and the trial court ruled that the evidence of defendant's refusal to take field sobriety tests at the scene was inadmissible, because the officer had failed to adequately advise defendant of the consequences of refusing to take the tests. *See State v. Rohrs*, 157 Or App 494, 970 P2d 262 (1998), *aff'd*, 333 Or 397, 40 P3d 505 (2002). The trial court ruled, however, that the refusal to perform field sobriety tests at the police station, as well as the refusal to take the breath test, were admissible, and those rulings are not disputed on appeal.

Judge Upton presided at trial. The prosecutor began her opening statement by mentioning the absence of field sobriety tests. She continued by describing the stop and the arrival of the back-up officer:

> "Officer Julifs shows up as sort of a backup officer, a cover officer. They'll tell you that that's standard procedure, they usually for officer safety reasons have cover officers, and so Officer Julifs shows up sort of part way into the stop.
>
> "At that point Officer Julifs actually begins to take over the investigation, and that's when [defendant] is asked, 'Will you do some field sobriety tests so that I can determine whether or not you're okay to drive,' and [defendant] says, 'I'm not doing your tests[.]' "

Outside the presence of the jury, defense counsel objected to the prosecutor's comment, asserting that the prosecutor had

improperly referred to defendant's refusal to take field sobriety tests at the scene of the stop, which had been suppressed. The court agreed that, from the jury's perspective, the prosecutor's comments described the refusal at the scene.

The prosecutor did not disagree with the trial court's characterization. She explained, however, that she had planned to describe only one refusal, and that, from her perspective, it made no difference where that refusal took place: "I have no reason to have one refusal over the other. I mean, there's no significance to me of it being at the scene or not." She explained further that, in fact, she had described the refusal at the police station, but had shortened her summary of the evidence by omitting mention of defendant having been handcuffed and transported to the police station.

The trial court explained that that was not how the jury would have understood it:

> "I take your word as an officer of the court that that's what you intended * * * but I think that the way it would be understood—the way that you're thinking of it is the way you know the evidence is, but we have to go by what the jury's hearing, and it sounds to me like what they're hearing is that at the—that they're talking about what happened right when they first approached him, which is the part that's excluded.
>
> "[Prosecutor]:   Mm-hmm.
>
> "THE COURT:   So that when you have testimony about what happens at the police station, they've now got scenarios with two."

Defendant moved for a mistrial, arguing that the prosecutor's reference to the refusal at the scene was prejudicial to defendant, because it would allow the jury to infer that defendant had been uncooperative from the beginning of his encounter with police and had refused to take tests at the scene that could have shown that he was able to drive himself home.

The trial court granted the motion, explaining that defendant's refusal at the scene was now in the jurors' minds and that "I don't know how to un-ring that bell." The court explained, essentially, that instructing the jury to disregard

the prosecutor's comment would only highlight the refusal at the scene and that the jury was also likely to hear evidence of defendant's second refusal at the police station.

Defendant subsequently filed a motion to dismiss the complaint on the ground that the prosecutor had intentionally referred to prejudicial evidence that had been excluded and that Article I, section 12, of the Oregon Constitution[1] prevents retrying him. The prosecutor acknowledged that, at the time of her comments, she was aware that the evidence had been suppressed; she argued, however, that she had not intended to refer to the first refusal. Further, she contended, she had not intended to cause defendant prejudice.

The court granted the motion to dismiss, explaining that defendant had established each of the three requirements set out in *State v. Kennedy*, 295 Or 260, 666 P2d 1316 (1983), for dismissal of a prosecution after the granting of a mistrial:

"It's the finding of this Court that first—the first prong of the test, Judge Upton did in fact make a finding that the conduct was so prejudicial to the defendant that it could not be cured by means short of a mistrial and did in fact grant a mistrial in this matter.

"The second prong of this test is the—what the State knew to be prejudicial. * * * It was clear that the first refusal, the motion to suppress was granted, and as [the prosecutor] indicated, that she was the attorney who argued for the State, so she knew that the information was suppressed.

"From the Court's notes, from the transcript, and from listening to the transcript, [the prosecutor's] statements clearly indicate to this Court, referring to the officer actually begins to take over the investigation and that it's when [defendant] was asked, 'Will you do field sobriety tests to make sure whether or not you're okay to drive,' and [defendant] says, 'I'm not going to do your tests,' refers to the evidence that was suppressed.

---

[1] Article I, section 12, of the Oregon Constitution provides:

"No person shall be put in jeopardy twice for the same offence, nor be compelled in any criminal prosecution to testify against himself."

"And finally, the Court in *Kennedy* indicates that the official knew what anyone in his or her position or should have known in his—official in fact knew what anyone in his or her position would know, and finally the improper conduct appears to be to this Court that the State was indifferent to the mistrial that could be expected to result."

The state appeals, contending that the trial court erred in granting the motion to dismiss and that the record does not support the findings that the trial court made in support of its conclusion that Article I, section 12 bars a retrial of defendant. We review for errors of law the trial court's decision to grant the motion to dismiss on double jeopardy grounds. *State v. Selness/Miller*, 154 Or App 579, 583, 962 P2d 739 (1998), *aff'd*, 334 Or 515, 54 P3d 1025 (2002). The factual findings underlying the trial court's ruling are reviewed for any evidence. *Ball v. Gladden*, 250 Or 485, 433 P2d 621 (1968).

■ In *Kennedy*, the Supreme Court set forth the test for determining when prosecutorial misconduct is sufficiently egregious to bar retrying a criminal defendant under Article I, section 12. As articulated by the court, retrial is barred when (1) the misconduct is so prejudicial that it cannot be cured by means short of mistrial; (2) the prosecutor knew that the conduct was improper and prejudicial; and (3) the prosecutor either intended or was indifferent to the resulting mistrial or reversal. 295 Or at 276. The parties agree that all three requirements must be satisfied in order for the case to be dismissed.

The trial court determined that each of the three prongs had been met, specifically finding that the prosecutor knew that evidence of the first refusal had been suppressed and that she referred to it with indifference to the mistrial that could be expected to result. The trial court's findings are binding on appeal as long as there is evidence in the record to support them. *Ball*, 250 Or at 487. The state contends that there is no evidence in the record to support the findings, and also disputes the determination that a mistrial was necessary to cure the prosecutor's misconduct.

■ We need not address whether the record was sufficient to permit the trial court to find that the prosecutor

knew that her conduct was improper and prejudicial and acted with indifference to a likely mistrial. Even assuming that the record supports those findings, we conclude that the trial court erred in dismissing the charge, because the first *Kennedy* prong has not been satisfied. The prejudice to defendant as a result of the prosecutor's comment did not require a mistrial.

In support of the trial court's ruling, defendant contends that, once disclosed, the fact of defendant's refusal at the scene could not have been removed from the jury's consideration, and the disclosure was prejudicial. Defendant's theory of prejudice is that the negative inference to be drawn from defendant's refusal at the scene, at which time he was not yet under arrest, is more onerous than the negative inference to be drawn from defendant's subsequent refusals at the station, when defendant had already been placed under arrest. The state counters that it would have made no difference to the jury whether the refusal was at the scene or at the station and that the reference to the refusal at the scene was not incrementally more prejudicial. Further, the state contends, any prejudice could have been cured by an instruction.

■■ Whether to grant a mistrial is a determination committed to the "sound discretion of the trial court," *State v. Rogers*, 313 Or 356, 381, 836 P2d 1308 (1992), because the trial judge is in the best position "to assess and to rectify the potential prejudice to the defendant," *State v. Farrar*, 309 Or 132, 164, 786 P2d 161 (1990). In this case, however, our inquiry is not whether the trial court correctly granted a mistrial, but whether the trial court correctly precluded a retrial, on double jeopardy grounds, because the prosecutor's misconduct was so prejudicial that it could not be cured short of a mistrial. That is a legal question that we review for errors of law. *Selness/Miller*, 154 Or App at 583.

We conclude that the trial court could have cured the prosecutor's misconduct, either by requiring the prosecutor to clarify that the refusal had taken place at the police station or by giving an instruction that the jury was not to consider any refusal that had occurred at the scene. *See State v. Wederski*, 230 Or 57, 60, 368 P2d 393 (1962) (the "presumably harmful effect" of prosecutorial misconduct may be

obviated by a proper instruction). In any event, even if it was not possible to erase the jury's knowledge of defendant's refusal at the scene, we conclude that the prejudice that resulted from that knowledge was not so extreme as to require a mistrial.

Initially, we note that the prosecutor's opening remarks were not evidence, and the jury had been instructed to that effect. Further, the prejudice to defendant was minimal. The prejudicial effect of the prosecutor's comment was the adverse inference that the jury could draw that defendant did not perform the tests at the scene because he believed that he would fail them. *State v. Fish*, 321 Or 48, 56, 893 P2d 1023 (1995). However, defendant had also refused field sobriety and breath tests at the police station, and those refusals had not been suppressed and presumably would have been offered into evidence. Thus, the jury would likely have heard evidence of two other refusals from which the adverse inference could also be drawn. Assuming that the trial court was correct that a curative instruction could not have removed the taint of the prosecutor's reference to defendant's refusal at the scene, we conclude that its adverse effect was not incrementally significant. We therefore conclude that any prejudice to defendant as a result of the disclosure was not so grave that a mistrial was the only legally acceptable alternative. *See State v. Evans*, 211 Or App 162, 169, 154 P2d 166 (2007), *aff'd,* 344 Or 358, 182 P3d 175 (2008).

Reversed and remanded.